Good morning. May it please the court, my name is Gia Kim, appearing on behalf of appellant Jason Azzara. There are three main issues in this case. First, the Fourth Amendment issue of whether the computer evidence should be suppressed. Second, the Miranda and Miranda progeny issue of whether Mr. Azzara's statement should be suppressed. And third, whether the residential and associational conditions of supervised release were properly imposed. I plan to focus on the Fourth Amendment and Miranda issues this morning. On the Fourth Amendment issue, here it's undisputed that the computer was searched on October 20th, which was six days before the warrant was issued in this case. The district court found that the warrantless search of the computer violated the Fourth Amendment and could not be justified on the basis of consent, and this finding was not clear error. First of all, the standard for review in this case on the consent finding is clear error. This court has repeatedly held that consent findings and findings on the scope of consent are reviewed for clear error. And more particular to this case, in the case of U.S. v. McLeany, when it was a question of whether consent had been invalidated, this court noted, we mand it back to the of whether the officers created a setting in which the reasonable person would believe that he or she had no authority to limit or to withdraw consent. As the district court correctly identified, McLeany and the Sixth Circuit's decision in U.S. v. Tillman are the operative precedents here. It's undisputed that the agents lied to Mr. Azzara, two agents, when they said they wouldn't take his computer. But, excuse me, didn't the district court decide on the basis of the independent source rule, it said regardless of whether there was consent or no consent, when the defendant said, if you look at my computer, you'll find child pornography, that gave an independent basis for the police to do the warrant, warranted search to obtain a warrant? Certainly, the district court did ultimately, after making this finding of no basis of the independent source doctrine. However, the leading case on the independent source doctrine is the Supreme Court's decision in Murray. And in Murray, in Justice Scalia's opinion, he sets forth two ways in which a source must be what he calls genuinely independent of the prior legal, in that case it was an entry, but a prior legal entry or search. The first way, which is actually the second requirement mentioned in Murray, is that it must be based on independent probable cause. So nothing seen during the illegal entry or search can be used in the basis for the warrant. And the district court found that there was independent probable cause, and we are challenging that finding on appeal. But Murray also sets forth a second requirement for a source to be genuinely independent. And that's what some courts have referred to as sort of the motivation prong. In addition to there being independent probable cause, there also needs to be an explicit finding on the record that the second or the application for the warrant wasn't, quote, prompted by what had been seen in the earlier legal search. Isn't that sort of hyper-technical, though, in this situation? I mean, the defendant says, if you look at my computer, you'll find child pornography. There wasn't anything remotely analogous in the Murray case. There, they didn't know, they had some suspicions that it was marijuana in the warehouse, but they didn't know until they opened the door and saw it. Here, they have the defendant saying, testify, my computer has child pornography on it. I don't think it's hyper-technical for this reason, because Murray clearly sets out two distinct factors, independent probable cause, which the Fifth Circuit has described as an objective factor that's reviewed as a question of la de novo. That's the part we are challenging. And then this subjective component is what actually motivated the agents to seek the warrant. And here, if you look at Agent Madison's case chronology, he didn't, he had all that information available by the time the interview was over, which was midnight on the evening of the 18th, early morning of the 19th. His case chronology shows that he didn't start drafting a warrant on October 19th. What he did instead on that day was he took the computer for forensic analysis. He got the results of that analysis indicating there was child pornography on the computer on October 20th. That was a Friday. The very next thing in his case chronology is that he called the AUSA, an AUSA, to inform them of the CP, or child pornography, on the czar's computer. Then the AUSA told them to prepare a warrant. So Murray makes really clear, and this court's decisions in such cases as Duran, Orozco, and Hill make really clear that these are two separate prongs. Even if it appears that the agents may have been prepared to get a search warrant anyway, which I don't believe is supported on this record so far, you also need to know or have a finding on what Agent Madison would have done. Why isn't it supported on this record? They were researching this illegal CP. They found he has a subscription. I mean, even if they hadn't heard his testimony that, yes, you'll find the child porn on my computer, they had enough to be suspicious and to want to investigate his computer. But given that he said, you will find child pornography on my computer, how can the record not support that finding? Well, the thing he said right after, take my computer, it's in God's hands now, he actually said, well, actually, my hard drive has been reformatted and wiped clean. So I don't think it's clear in this case that the agents could have been certain, you know, at that point if he's giving them consent to the computer, that they had actually found it. Well, all they needed was, you know, the probable cause to think that it was there. I guess you're arguing that they would never have, they wouldn't have gotten the warrant unless they had taken the peak search? Is that essentially what you're arguing? Yes. Or at least at a minimum, there wasn't any explicit finding on that point. And Murray requires a specific explicit finding on that point. So we do agree that that question would have to be remanded as a factual finding for the district court to make in the first instance. Did the application for the search warrant mention anything about this review of the computer? No, it did not, which is why we're not arguing that it was based on independent probable cause, objectively speaking. But as to the subjective question of whether Agent Madison was prompted to seek the warrant by the computer, that's a different question. So you're saying that he was prompted to seek the warrant by the computer to tell pornography he's learned of during the first illegal search? Well, you know, I guess my trouble is, it's not disputed that they went there looking for a computer that had the illegal pornography because they knew that the subscription had been, to this site, was at that address. Isn't that right? Yes. But I don't think at that point they had enough to get a warrant. I mean, obviously, that investigation No, but it was after that point that they were told by him that that was the computer. Sure. And certainly that was a finding that the district court was free to make, but this Court has repeatedly emphasized that that's a finding for the district court to make in the first instance. And I will submit, based on the order here, it simply wasn't made. Okay. Do you want to touch on any of the other points? Certainly. Turning to the Miranda question in this case, this was an at-home interrogation. And the government seeks to analogize this case to other at-home interrogations that were deemed amicable or there was a case in which an interrogation lasted only a few minutes and the defendant's wife was present. I think it's important to look at this Court's decision in Craighead from last year, in which it set forth some factors that may be particularly relevant to the custody determination when the interrogation takes place in a suspect's home. The thrust of Craighead, in Judge Bailey's opinion, is that the typical free-to-leave question of custody doesn't necessarily map on conceptually very well onto an in-home interrogation. Obviously the factors used to determine custody aren't exhaustive or exclusive, but Judge Bailey identified certain other factors that may be particularly relevant to an at-home interview. For instance, the number of officers and whether they were armed. Here there were four officers who were armed and wearing protective vests. Were there, was there arms? I thought their arms were not visible, so they didn't have them revealed to the suspect. There isn't any indication in the record that the defendant did see the arms, it's true. Also the positioning of the officers in the home was found important in Craighead, as opposed to actual physical restraint or threats of force. In Craighead they noted that the way the officers were positioned between the defendant in that case and the door could have created a sense of restraint. The same is true in this case where there were four officers in Mr. Azar's apartment, all between him and the door. The fact of whether – Is this sort of like the small apartment rule? Like in Craighead, they take him to a room, they close the door, and they stand in front of the door and they don't let him out. Here it's a small apartment and there's four police. And so it seemed, well, if that's always going to be – meet the Craighead standard, then it's sort of the small apartment rule. You can't have more than two police officers in a small apartment or it's custodial. Is that what you're aiming at? No, I wouldn't say there's a hard and fast rule that a certain number of people in a given small space creates the impression of custody. I think the way in which they were positioned here, where they were all between Mr. Azar and the front door, you know, Agent Belli in this case appeared to be sort of keeping watch at the door. I think it would be the totality of the circumstances, but I do think the sort of crowding aspect is an element that should be taken into account in the custody. They didn't have anybody trying to get into the room like they did in Craighead, did they? I mean, in Craighead, they prevented somebody else from coming in. There is no evidence in this record that there was someone who was – in Craighead, there was a superior officer who was, you know, blocked from entering the room who was supposed to help him. Nobody was trying to get into the room or get out in this case, right? I mean, there was some indication that Mr. Azar's roommate was maybe around, but that Mr. Azar did not want him in the room. But there wasn't anyone else in the room. Well, how much deference do we owe to the district court in the way that the district court resolved this? I mean, obviously, the factual findings as to the scene-setting facts, where people were standing, what was said, is reviewed for clear error. I think this is one of the factors to reverse a district court's findings on custody in such cases, however. And moving briefly to the post-Miranda statements, we have argued that they also need to be suppressed for two reasons. One, on the basis of Edwards v. Arizona, because there was a request for counsel. And secondly, on the basis of Missouri v. Siebert, or specifically Williams, which is his opinions in Missouri v. Siebert, as to whether a two-step interrogation occurred. If there are no further questions, I'd like to reserve the remaining time. Thank you. We have about two minutes left. May it please the Court, Margaret L. Carter on behalf of the United States. The district court denier in refusing to exclude defendant's statements because the knock-and-talk interview at the defendant's home on October 18, 2006, was noncustodial. The defendant relies primarily on the Craighead decision and suggests that it might set out a heightened standard for at-home interviews. And I think that's simply not the proper reading of Craighead. That case dealt with a much different situation than the knock-and-talk interviews that a variety of courts, including the Supreme Court in Beckwith and the courts in Gregory and Ede, have held to be less likely to be custodial. Because they involved an invitation into a comfortable situation, followed by questioning that the subject was free to end at any time. Craighead involved a much different situation. It involved a search warrant at the defendant's home. And the Craighead court therefore held that that case, that situation where there was a search warrant being executed, could have the potential to take an at-home interview out of this area where it was always held to be less custodial, and into an area where it might actually become a police-dominated situation akin to custody. And that's the context and the fora in which Craighead was decided. But the Craighead factors are very kind of unique to that situation. And for each one of the additional factors mentioned by Craighead, they were far worse than what was happening here. I just want to address two factual issues that came up in defense counsel's opinion, blocking the door. The facts here at that point are not analogous to Craighead, where an officer first of all moved the subject to a different location, shut a door, pressed against it such that if the person wanted to leave, they had to push past the officer. Or to Kim, where officers also again, executing a search warrant at the subject's business, locked a door between her and her husband. In this situation, the facts are that Agent Belli was standing in an open doorway, moving in and out, sometimes to take phone calls. She wasn't even present during all of the interrogation. She was clearly not blocking any exit. And again, this wasn't a situation like Craighead in the first place, where the police had a right to be there and independent of the subject's own free will. In this case, they could have simply asked all of the agents to leave. And that's something very different than the execution of the search warrant. Was he walking around during the course of the conversation? He was. And he admissed this himself. He got up, walked around the room, got himself a glass of water, smoked cigarettes. The agents testified that he lit cigarettes on the stove burner. And these were all findings made by the district court, with the exception of the stove burner. I don't think the district court went into that level of detail. But it found that the defendant was free to move around and did so during the interview. And the defendant himself admitted that. In addition, the defendant in his briefs makes a big issue about the roommate. And it tries to analogize this to a situation like Craighead or Kim, where the subject was isolated from other people who might have provided more comfort or more comfortable surroundings, might have made them feel more in control. This situation is simply not analogous because the defendant himself testified that he wanted the agents to keep his roommate out. He asked the agents to keep his roommate out because he didn't want his roommate to see what was going on. And so, again, it's just not the same situation as Craighead. Did the agents tell the defendant that he could leave at any time or could cease the discussion or anything like that? They did repeatedly. And that was another finding made by the district court and another thing that the defendant admitted. He said that he was repeatedly told that he was not under arrest. The agents testified that at various points they told him it was up to him whether to continue talking to them. They made that statement at the time that they gave him, they advised him of his Miranda rights and had him sign a waiver and had him agree in writing to continue without an attorney. And again, that was a finding made by the court and something to which the defendant admitted. I would therefore submit that the district court properly analyzed the relevant factors in this case. It properly applied the factors that this court has set out in Hayden, Kim, and Bosignani. And I would like to note that Bosignani came after Craighead and, again, doesn't suggest that the Hayden, Kim factors are out the window. And also analyzed even some of the Craighead factors, discussed the number of officers, discussed the fact that the officers were wearing plain clothes and did not draw their weapons, discussed the defendant's feeling that he felt surrounded and dismissed that as his subjective view of the situation. So on all of these facts, I would submit that the district court properly found that it was not a custodial situation and that it is just on its face very different, kind of a classic knock and talk like Beckwith, Gregory, and Eade, and very different from Craighead and Kim. Just briefly, I would say that in the alternative, the post waiver statements are admissible because there was no two-step interrogation and the remark about counsel that the defendant made was equivocal. First of all, I would submit that the Miranda warnings that were given were not even necessary because this was not a custodial situation. But even if it were, this wasn't a two-step interrogation because he hadn't confessed at the time he was Mirandized. He hadn't made the incriminating statements about child pornography on his computer or even about the subscription to the AdSoft website at that point. He just said he didn't recall. And then he made a very equivocal statement which I submit can't be true. When you talk to a lawyer, the subject in Davis who is in custody said maybe I should get a lawyer. They're not functionally different. There's a note in the defendant's briefs where they seem to suggest there were three separate instances where there was a mention of counsel. But in fact, the defendant himself admitted that he only made that one statement in those words, I should probably seek legal advice, and then he only made it one time. So I would submit that this is just not a two-step interrogation where the warnings were motivated by a confession. The district court correctly concluded that the October 27th search was conducted pursuant to a valid search warrant based on independent probable cause. The district court didn't make an express finding, though. Aren't we under Murray v. Carter required to send it back to have the district court make such a finding? The Supreme Court was pretty clear that court of appeals don't go making any fact findings in this area. Well, I would submit that the findings are sufficient in this case. And I noted five separate findings in the district court's order that the government would rely on. And those are set forth at pages 49-50 of the government's brief. The district court concluded that probable cause did not depend on the agent's wrongful search and seizure, that Madison believed when he sought the search warrant that probable cause had already been established on the basis of defendant's statements during the interview and on the prior investigation, that agents had already identified the defendant as a purchaser of the illegal .CP membership before the computer was seized, that he admitted that child pornography images were on his computer before the computer was seized, and that agents had talked extensively throughout the whole interview about sending that computer for forensic analysis, taking the defendant's computer. They revisited it multiple times. That was the point of the knock-and-talk interview. But the fact of the matter is that they didn't get the warrant until after they had taken the computer. That is true. But the independent source rule, and I think, you know, arguably, and we have an alternative argument about why the search could have been justified on the basis that consent was given and not revoked, but arguably, if there was a blunder, the blunder was the seizure and the preview. And the independent source rule says that the agents shouldn't be made any worse off by their blunder if an independent source exists. And I would submit that they were going to search that computer, that they were going to get a warrant to do so, that that was always clear. And so the problem was that they searched before the warrant, but that blunder was not going to ever change the source. Well, but the district court never said they would have obtained the warrant even if they hadn't gotten the peek. Well, I submit that that is the conclusion from the district court's findings. But the court didn't say that. And the court also didn't give any reason for why, if they didn't want to make sure before they got the warrant, why they took the computer to take the peek. The court didn't address the issue in those terms. But I would submit that its findings, that they already believed that they had PC to search, that that was the whole motivation for the knock-and-talk interview, are sufficient on this record. As Judge Okuda noted in earlier questioning, this isn't the confirmatory search scenario that the cases get concerned about. This isn't a situation where they didn't know what they were going to find. They wanted to see if anything was there. They already knew, based on the defendant's statements, that there was child pornography on the computer. They were already going to search based on those So the Supreme Court says that the problem or the error that the Court of Appeals made in Murray was that the district court did not explicitly find that the agents would have sought a warrant if they had not earlier entered the warehouse. And here we don't have that sort of express finding. And so your argument is that notwithstanding the district court's failure to provide that express language, we're not bound by Murray because there is adequate evidence that or adequate findings from which we could infer the government would have gone ahead anyway? Or how do we distinguish that language? Well, the government's position would be that the findings that there are are sufficient, because that is the natural conclusion, which is that the agents already believed that they had probable cause. They were there to get that computer. They confirmed before this seizure and the preview. Because there was evidence like that in Murray. All that goes to the existence of probable cause. It doesn't go to the second motivational element. I would argue that it does, Your Honor, because again, this isn't a situation where they needed or where they learned something new in the computer. They were already going to do the detailed analysis that a warrant was needed for. The blunder was that they believed, if it was a blunder, the blunder was that they believed that they had valid consent. But yet they got the warrant anyway, even though they said in the warrant itself that they believed that they had consent. They said he gave consent to search, and that's why the computer was in ICE custody. So I think that on those facts, it is clear that they weren't doing it then to abandon search. That sounds a little like 2020 hindsight. Again, I guess I would go back to this notion in the independent search rule that the agents should not be made worse off for the purported blunder, which I think in this case is clearly the seizure and the preview. If there had been no seizure and no preview, I think it's very clear on this record that they would have gotten the warrant. I see these arguments going to the district court and being persuasive to the district court. I'm just not sure how we as the Court of Appeals in light of Murray could say, it doesn't matter that the district court didn't make the express finding. That's what I'm looking for. I understand. Again, I would distinguish Murray by saying that the confirmatory search in that instance was different, that they didn't know what they were going to find. There's a different peril about whether the independent search was genuinely independent, as Murray states. I think here you don't have that peril and that the findings really lead to only one conclusion. If you're right, then you don't have much to lose by remand, do you? Well, Your Honor, certainly if this court determines that the findings are insufficient, remand is the appropriate course. It appears that the defendant has abandoned its initial argument that this court should just throw out the search for lack of sufficient findings. The government contends that the findings are sufficient on this record based on the differences between this case and Murray. But if this court were to disagree, then obviously remand would be the right choice. Thank you. Thank you. I'd just like to make a couple final points on the independent search doctrine. First of all, this case actually isn't different from Murray. In Murray, agents forced entry into a warehouse and saw marijuana in plain view. They then didn't touch it, left, and got the warrant. So again, as in this case, something was seen during the illegal entry or the illegal search, and they knew what they were going to find by the time the warrant was executed. Second, I think it's important just to distinguish between the motivation for doing the interview with Mr. Czar in the first place, certainly there are some suspicions, versus what Murray requires a finding on, which was the motivation for seeking of the warrant. Did it have something to do with what was seen during the illegal search? And I would just draw this court's attention to the case of U.S. E. Beardsley, in which this court, unlike Duran, Orozco, and Hill, where the findings were found not sufficiently explicit, as in Murray. In Beardsley, the finding was found sufficiently explicit. This court cited the district court's order, and it said that the subsequent findings had not been seen by the prior legal search. In Beardsley, an investigation of an arson had actually been abandoned, and then the government got a tip and resumed their investigatory activities. So there is a clear distinction between cases in which the finding was explicit and the cases in which it wasn't explicit enough. Thank you. The case just argued is submitted for decision.
judges: Siler, Schroeder, Ikuta